IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BALTIMORE-NIGHT BOX

2010 JUL 22 PM 9: 45

U.S. BANKRUPTCY COURT
DISTRICT OF MARYLAND

TONYA ALLEN                               :

    PLAINTIFF                            :


    v.                                   :        CIVIL ACTION NO.:

KENDALL RIDGE APARTMENTS                           **JFM 10 CV 2021**
FAIRFIELD PROPERTIES, L.P.                :

    DEFENDANTS.                          :


### EMERGENCY REQUEST FOR INJUNCTION

Now comes, Tonya Allen, *pro se*, who is a person with asthma. She is a person with a "handicap" in accordance with 42 U.S.C. §3602(h) and has been repeatedly and unfairly "subjected to discrimination on the basis of disability" pursuant to 42 U.S.C. §12188(a)(1). Plaintiff is an "aggrieved person" pursuant to 42 U.S.C. §3602(i) and 42 U.S.C. §3613(a)(1)(A). Defendants have repeatedly intimidated, interfered, and threatened Plaintiff, pursuant to 42 U.S.C. 3617 § 818. Also, Plaintiff has been repeatedly discriminated against, and denied her legal right to enjoy the use of the unit she occupies, violation of 42 U.S.C. § 3617.

The request for an injunction from this court qualifies as an emergency. Plaintiff needs immediate relief from intrusive, passive debilitating cigarette smoke. Defendants claim they have "done all they could." In reality, Defendants have failed to abide by the Fair Housing Act. Plaintiff has suffered, and continues to suffer from the intrusion and seepage of Tenant's Boyfriend's cigarette-smoke. It infiltrates Plaintiff's unit by seeping through the ceilings and walls of Plaintiff's apartment. Defendants' sent a letter to tenants, requesting they smoke on their balconies. This was considered a reasonable accommodation for Plaintiff. However, Tenant's Boyfriend continues to smoke inside the unit. He refuses to smoke on the balcony. The Tenant has repeatedly lied and said no one lives with her in #426. That is not true. She has a Boyfriend, who is a chain-smoker. He stays in the unit and smokes all day.

Defendants have refused to get the Tenant's Boyfriend to stop smoking inside the unit; and abide the by request to smoke on the balcony. Thus, Defendants have systematically and purposefully engaged in a pattern and practice of disability discrimination against Plaintiff.

Defendants refuse to believe Plaintiff is suffering—despite the many letters informing Defendants Plaintiff continues to suffer. Further, the Fair Housing Act is supposed to be an effective protection for tenants who suffer from the effects of passive second-hand cigarette smoke. Although Defendants persistently claim they have been "talking" to the tenant; nothing has been done to stop the smoke from entering into Plaintiff's unit. If this court does not provide Plaintiff with a remedy regarding this matter, Defendants will continue to do absolute nothing to stop the debilitating, intrusive second-hand smoke. The Defendants and attorneys for the property have refused to enforce the request, and the Director informed Plaintiff that it was the tenant's

"discretion" to smoke on the balcony.  If so, why would they issue a letter requesting tenants smoke on their balconies?

The Director has threatened and used intimidation.  When Plaintiff informed the Director that she would be placing rent in escrow; the Director told Plaintiff that she could still be evicted.  The leasing consultants have repeatedly stated that the tenants who smoke are protected under the Fair Housing Act.  That is not true.  This adds another layer of difficulty for Plaintiff.  If the staff are disclosing false and damaging information, such as this; it gives tenants a reason for not complying with requests for reasonable accommodation; and also gives tenants a reason to cause harm to Plaintiff.  It is a fact that "smokers" are not members of a protected class.  If they were, you could not ban smoking in public places.

In June 2010, Plaintiff was wheezing severely from the intrusive smoke.  Her mother called and asked the leasing consultant to check apartment #426.  The Boyfriend of the tenant was in the unit smoking.  The leasing consultant said she was on her way to check.  However, during that time, Plaintiff was leaving the unit (to escape the cigarette smoke) she saw the leasing consultant leave the building.  In fact, the leasing consultant was driving in front of Plaintiff's vehicle.  The consultant drove to the Target shopping center.

Plaintiff returned, and she and her mother went to the leasing office.  Plaintiff went request a meeting between Plaintiff and Tenant—in order to resolve this matter.  While in the office, the leasing consultant had returned to the office.  Plaintiff's mother asked her if she went to check on #426.  She stated she did not go.  However, the manager, stated that she went over and checked and waved her hand while stating:  "It must have cleared out."  That is a lie.  Had the manager even tried to enter #426:  a)  It is very likely the Boyfriend engaged the interior "second" lock.  No one can enter when that "second" lock is engaged.  b)  If she did enter, and he did not engage the "second" lock, she would have witnessed him being in that apartment, and smoking.

The comments made from manager and leasing consultant give Plaintiff cause for believing they agree that Boyfriend should be allowed to smoke in the unit.  Also, this impedes and harms Plaintiff.  Plaintiff is not interested in person opinions of Defendants' staff.  She is only concerned about her health, and the law that protects her health.

Later that day, during a telephone conversation, Director told Plaintiff that both the leasing consultant and the manager went into #426.  The Director was somewhat combative about this, and Plaintiff's mother even informed Director that the leasing consultant told her she did not enter the unit.  Obviously, the manager lied to the Director.  However, as usual, not surprisingly, the Director believed that lie, and ignored the health and danger imposed upon Plaintiff.  These are, again, reasons why Plaintiff continues to suffer and has to vacate the unit.  There is no excuse for lying and impeding any actions from being taken to stop the cigarette smoke.

In June, the meeting commenced.  During the meeting, the Tenant lied on Plaintiff and her mother.  Tenant accused Plaintiff's mother of writing offensive remarks in a letter to Tenant.  Plaintiff's mother wrote a letter, on her daughter's behalf to the tenant.  Plaintiff was not aware of this until the meeting.  Plaintiff's mother was unable to attend, because the meeting was set-up within a short period of time.  Plaintiff had her friend present, who also experienced smoke emanating from Tenant's apartment.  Plaintiff's mother also gave a copy of the letter to Defendants.  The Tenant lied about the language used in the letter.   Despite having a copy of the same letter, the Director did not inform Tenant there was no such language in the letter.  Also, Tenant accused Plaintiff of harassment.  In fact, the meeting was riddled with attacks on Plaintiff.  The meeting was not constructive in bringing this matter to a resolution.  Also, the tenant in #426 stated that cigarette smoke does not travel "downward" and does not "…go through walls…"  If there is no one smoking in her unit, why would she state this?  Yes, smoke can permeate ceilings and walls.  Also, surprisingly, during the meeting, the Director

stated that cigarette smoke can travel through drywall. Yet still, Defendants have done nothing to stop the smoke from entering Plaintiff's unit.

Also, Director has informed Plaintiff and her mother she is protected under the guise of the Fair Housing Act. However, during the meeting, Plaintiff stated she is being discriminated against because of her disability; and Defendants and Tenant were violating Plaintiff's federally-protected rights. During meeting the Director never stated Plaintiff was protected by the Fair Housing Act, and never even told Tenant that if there is anyone smoking in her unit, that person needs to stop. The meeting was not about ending the disability discrimination. It was about attacking Plaintiff. That was not Plaintiff's intention for requesting a meeting. The Tenant repeatedly lied and said no one else was in her apartment. That is a lie. Her Boyfriend moved in with her, and Plaintiff even told Director some time ago, she thought he moved in, and felt she would be "doomed" and her health would suffer. The Boyfriend had been smoking excessively—prior to moving in. Plaintiff heard noises like objects being moved around, etc. Also, Plaintiff can hear Tenant's foot-steps. Plaintiff does not hear Tenant coming into the bedroom; except during their moments of intimacy. Plaintiff believes Tenant is sleeping in the living room.

During the meeting, the Director stated she would have an Indoor Air Quality specialist inspect the units. The Plaintiff gave Director this suggestion last year. During meeting, Plaintiff's friend asked the Director why it to her to hire a specialist? It is of no matter, anyway, because Director never even contacted the specialist. However, the Tenant in #426 stated: "They're not just coming into my apartment, They should be coming into everyone's apartment." The Tenant has ignored the Defendants' request to smoke on the balcony. All tenants were requested to do this.

However, she has the right to violate a reasonable accommodation request; and refuses to stop her Boyfriend from smoking inside the unit. What is so special about him—wherein he has the right to ignore the request? In essence, she can do what she wants; the Director has some sense of "loyalty" to Tenant; Plaintiff believes staff feels Plaintiff has no rights; that the Tenant's Boyfriend has a right to smoke in the unit; and they could care less if Plaintiff suffers…because she can just move.

It is acceptable to discriminate against Plaintiff, and the Boyfriend has the ability to ignite as many cigarettes as he chooses—inside the unit. The Boyfriend probably does not pay rent. He smokes all day in the unit. Plaintiff, however, does pay rent. This is an injustice, and it is dehumanizing to Plaintiff. All of these perpetrators feel Plaintiff's live has no legal rights and no value. Plaintiff should be validated—just as Tenant is validated.

Plaintiff's purpose of setting up the meeting was to face the tenant in #426 and let her know, in-person, that her boyfriend's cigarette smoke is detrimental to Plaintiff's health. Plaintiff also wanted to put an end to the intrusive smoke. In fact, Plaintiff was only attempting to save her life.

Also, in June 2009, Plaintiff was leaving the unit—due to an asthma attack from smoke. There was smoke emanating from #426. As Plaintiff was driving away, one of the leasing consultants approached Plaintiff. Plaintiff could not even speak. The only comment the leasing consultant made told Plaintiff was: "You can't tell people what to do in their apartment." This is all she could do say to Plaintiff. She did not even ask what she could do to help Plaintiff. The failure to educate and inform staff about the Fair Housing Act has caused Plaintiff great harm. Plaintiff was wheezing, severely, and Defendants only cared about the rights of smokers. They have continually expressed their only concern is that the Tenant's Boyfriend gets to smoke inside the unit. They have repeatedly defended his smoking. The leasing consultants smoke, and their bias is causing Plaintiff to suffer.

Landlords should be held accountable. They should not be able to take money from tenants; make profits; and ignore federally-protected rights of tenants. They discriminate against those with valid health issues; life-threatening illnesses; and who could possibly develop lung cancer. They are protecting smokers—they are not members of a protected class. They know their buildings are made of dry-wall, and they are aware of the studies that show how smoke infiltrates other tenants' apartments. This ignorance of the law is why Plaintiff desperately needs an injunction. In particular, Maryland landlords are discriminating against tenants with valid health issues; and are not taking any corrective actions to stop the smoke from entering into the units of those who suffer. It is incumbent upon courts to ensure the rights of tenants are not being violated. Courts can enforce the laws set in place to protect those who suffer.

These intentional interferences and lies impede Plaintiff's right to live and breathe. Defendants and staff just want Plaintiff to leave, and have told her, on several occasions, she can leave. What happens when the next person moves in and complains of the traveling, dangerous second-hand smoke? What happens when they are not able to even rent #426 because of the excessive cigarette smoke/other burning substances? In July, Plaintiff even contacted the Director, while wheezing, from the intrusive, passive cigarette smoke. Plaintiff had to leave the unit, and left a brief message. Plaintiff also left a message for the Director's supervisor. However, when Plaintiff returned home, there were no messages/return telephone calls. The Director and her supervisor both have the same last name. It is Plaintiff's belief that they are related. Also, Plaintiff even sent a letter, via facsimile, to the CEO of Fairfield Properties. She never received any response. Even the receptionist at Fairfield tried to deny there was a CEO. She told Plaintiff that only Director and her supervisor are in charge.

A disability that impairs the life of a human-being is being caused by someone else's cigarette smoke. The landlord has the right to stop it. However, Defendants refuse to do so. The reasonable accommodations are much-needed, in order to afford Plaintiff full enjoyment of the unit, and the right to live and breathe—just as others who live and breathe. 42 U.S.C. Section 3604(f)(3)(A). Further, there is no legal right to smoke. There is a legal right to breathe under the guise of the Fair Housing Act. Asthma is already a debilitating condition. Plaintiff does not need the added burden of suffering from asthma attacks and other complications. Landlords even have the right to prohibit smoking. Landlords are also responsible for failure to protect a person who suffers asthma. The involuntary, intrusive smoke causes Plaintiff to suffer, unnecessarily. It is not Plaintiff's intention to stop people from smoking. She only wants Defendants to enforce the "smoking on the balcony" request.

The Director claims she has done all she could to "reduce" the effects of the passive, detrimental second-hand smoke. She wrote Plaintiff a letter, in June 2010, noting that in July 2009, maintenance placed caulking around the baseboards; insulated all doors and window; insulating pipe; insulated outlets; added filters in air-vents; and added True Air filter. When, in fact, Plaintiff was home when maintenance came to only install filters in the bedroom air-vent and the living room air-vent. Also, Plaintiff checked to the filter in these vents. There was no "tar" on these filters. Thus, the cigarette smoke is coming through the walls and ceilings. Also, maintenance also placed a plug-in True Air filter in the hallway outlet. Although Plaintiff appreciates Defendants' efforts, these efforts proved to do nothing to stop the smoke from seeping through the walls and ceilings.

Plaintiff responded, via letter to Director. Plaintiff informed Director that there was no caulking around the baseboards; no insulation of any pipes; no insulation of outlets; and no insulation of windows and doors. In fact, Plaintiff was freezing last winter and had to add the use of a space-heater. There most certainly no insulation around the patio door in Plaintiff's bedroom.

4

Also, maintenance came in June 2010, to perform all of the above-listed tasks. Plaintiff knew something was going to happen the next day. The Tenant spent all night cleaning the bedroom. In fact, it was very late, and she was banging; throwing things around; and vacuuming. The next day, Plaintiff could see maintenance on the balcony insulating the patio door, and she could hear him walking and working throughout the apartment. This was a year after maintenance came to Plaintiff's apartment. Thus, Defendants seemingly do not understand the importance of breathing and not suffering from second-hand smoke.

The day after maintenance performed these tasks, the Boyfriend came home that evening, and smoked so much, Plaintiff had to leave her unit. Therefore, it is obvious that caulking, etc. does nothing to stop the smoke. The smoke comes through the ceilings and walls.

Plaintiff believes both parties should be able to live in their respective units—and enjoy same. However, the tenant allows her boyfriend to cause harm to Plaintiff, and nothing is being done to stop his dangerous chain-smoking. While the tenant continues to manipulate and lie to Defendants, Plaintiff continues to suffer. The Director even asked Plaintiff for any "suggestions" she may have—as she has done all she could. The Plaintiff could not believe what she was reading. She replied that the Director could serve the Tenant with a warning letter, and if it does not stop, a 30-day-notice to vacate. However, she said it would be "illegal to give her a 30-day-notice to vacate." However, it is not illegal to violate the rights of a person who has a disability? If Defendants gave a warning, that would let Tenant know she is in violation, Plaintiff believes the smoking will stop. Tenant believes she can do what she wants, and does not have to move. That is why Plaintiff continues to suffer: Tenant is allowed to do what she wants…not what is required by law. Tenant has no legal basis for a lawsuit. She, in fact, received numerous complaints about the second-hand smoke. However, she is still letting her Boyfriend smoke in the unit.

If a tenant plays music too loud, past a certain time, he can be told to turn it down. If there are noxious cooking odors emanating from a unit, that person can be told to stop. Since multi-family dwellings are poorly designed, second-hand smoke travels through dry-wall and other openings. This is also a Real Property Code violation. The unit is not habitable with smoke infiltrating another unit. That is the problem Plaintiff has been battling for some time. There are numerous studies which show how smoke can travel and get through walls and ceilings. The Director continues to dismiss Plaintiff's requests for assistance; and ignore Plaintiff's rights pursuant to 42 U.S.C. Sections 3601-3619. I have sent numerous letters informing Kendall Ridge that I had to leave the unit…while they were able to enjoy the use of their homes. No one wants to have the responsibility of paying for rent, and not be able to live in that unit.

Plaintiff has grounds to plead for an injunction—due to the fact that Defendants have failed to enforce the request that the person smoke on the balcony--despite the fact that the tenant denies anyone smokes in her apartment. It is Plaintiff's only way to get relief and be allowed to fully enjoy the use of her unit; just as Tenant and other tenants enjoy their units.

Plaintiff was accused of harassing the tenant in #426. In fact, last year, a friend and Plaintiff's mother knocked on her door (their decisions) and asked for her cooperation. Plaintiff's mother also wrote her a letter. That does not constitute harassment. In the meeting, tenant also accused Plaintiff of banging, repeatedly on the ceiling. In February, Plaintiff informed the Regional Director, in a letter and via telephone, that someone hit the ceiling. This was out of frustration, because the boyfriend would not stop smoking. It was not a persistent bang. The Tenant stated that Plaintiff repeatedly bangs on the ceiling, and continues to have people come to her unit. That was and is not true, and demoralizing. It seems Director believes what Tenant says about Plaintiff.

However, Director refuses to acknowledge Plaintiff's suffering. No one else has been to that apartment. She continues to lie on Plaintiff and lie about what is really going on. She is trying to keep the truth "at-bay" so her Boyfriend remains in the unit smoking all-day-long.

Plaintiff also suffers from chronic, debilitating, Rheumatoid Arthritis, and has difficulty with using her arms, hands, and other major extremities. Thus, she has difficulty even raising her arms above her head. Plaintiff needs surgery, and cannot even have surgery. Plaintiff is suffering from an arthritic nodule which opens—during moments of extreme stress. This is a very painful and complex issue with one of her joint replacements. She saves what little use of her arms for performing what little duties and functions her joints allow her to do—every day. Yet, Director believes whatever lies Tenant tells her. Plaintiff is not in physical condition to bang on any ceiling—as alleged by Tenant. The Director refuses to believe and/or verify that anyone else is smoking in the unit. The tenant and her boyfriend produce noise, late-at-night, during their moments of intimacy. This is a nuisance. Plaintiff has informed Director. However, this continues to happen. The Tenant can cause nuisances and nothing happens. Plaintiff is appalled and amazed at the "loyalty" Director and staff has to this Tenant. Every tenant deserves to be treated fairly, and with respect. No tenant should be treated better than another.

Also, one night, Plaintiff just returned to her unit at around 12:00 a.m. She was forced to leave earlier, because Boyfriend was smoking his other caustic brand/type of substance. He gets to choose how much harm he will cause Plaintiff because he is allowed to do as he pleases. Why? He has the Tenant to look after him and ensure he can do as he pleases. The Tenant has Defendants to ensure she can get away with her deception; false accusations against Plaintiff; can discriminate against Plaintiff; and bears no consequence for her actions. However, Plaintiff does not have anyone. She cannot even get the police to help her.

Whenever the Boyfriend smokes that brand/type of substance, it is far more detrimental to Plaintiff's health. In addition to burning eyes, wheezing, headache—she throws up because of the extreme nausea, her skin itches—severely. When Plaintiff entered the unit, the smoke was still prevalent. She went into the bedroom and it was even worse. She felt it necessary to yell: "Whatever you are smoking, you are supposed to be smoking on the balcony...so go outside." A few minutes later, a man was banging on Plaintiff's door. He continued to bang, loudly. Plaintiff looked to peep-hole and did not realize, initially, who the man was. However, later she realized he was a tenant who lived upstairs. Plaintiff did not open the door. Plaintiff believes the Tenant lied to the tenant, and must have told him something to get him to knock on Plaintiff's door.

First, the tenant did not know what was going on. Why would you go knocking on another person's door—just because someone tells you something is going on? This depicts the selfishness of the Tenant upstairs. She was only concerned about herself, and did not care if that man was arrested for banging loudly on Plaintiff's door. She was not concerned if Plaintiff wrote a letter to Defendants—as this was harassment. He is not privy to this matter. He has no idea of how I have suffered/still suffer from the effects of her Boyfriend's intrusive smoke. Plaintiff has seen and spoken, in passing, to this tenant. She intends to approach him when she sees him and tell him not to knock on her door again. Plaintiff also believes Tenant asked him to knock because Tenant is also trying to defame Plaintiff's character. Plaintiff does nothing to disturb any of the tenants at this property. She is not a problem-tenant. It is the Tenant upstairs who has persisted in trying to harm Plaintiff—with her Boyfriend's smoke, and force Plaintiff to leave.

The Tenant is desperate to keep a boyfriend and Plaintiff is desperate to have a place to live; not suffer from intrusion of cigarette smoke; and not die from lung cancer. Also, during the meeting, Tenant was supposedly represented by an attorney. The Director did not obtain this individual's name. Tenant never made any reference to Plaintiff about being an attorney. Also the woman who represented Tenant never provided

Plaintiff with a business card.    During the meeting, Tenant stated that she "is an attorney," several times. However, if she is not an attorney, and Director was aware of this; then Director and the woman who purported her self to be Tenant's attorney, are all being deceptive, and acting in concert, to intimidate Plaintiff. If Tenant is an attorney, she should be sanctioned for her inappropriate conduct…or disbarred. If she is not an attorney, she is being fraudulent.

Moreover, the representative asked Plaintiff's friend why Plaintiff could not move somewhere else. Plaintiff's friend informed the representative that there are no non-smoking buildings in the State-of-Maryland. The Plaintiff finds it very unnerving that this person, and others, feel she should keep moving…or not have any place to live at all.

Contrary to the belief of others, this important, life-threatening matter is not a menial dispute between Plaintiff and the Tenant.    This is a matter that has been forced upon Plaintiff, and not of her choosing. Plaintiff is, in essence, "involuntarily" smoking.  Every time Boyfriend ignites a cigarette, Plaintiff inhales the dangerous, life-threatening carcinogens that are emitted into the air.  She has no other choice than to fight, without any assistance from Defendants, police, fire department or anyone else with the power to stop the smoke from entering into her unit.  Where is Plaintiff's life-line? Who is looking out for her health and the damage she incurs every day.  She also has the right to protect her reputation. She is not a trouble-maker. She is being imposed upon and assaulted, every time her boyfriend ignites a cigarette.  She has to do all of the work to fight for her life, because Defendants refuse to do anything to stop the infiltration of dangerous, cigarette smoke.  No human-being should have to suffer such egregious acts.

Plaintiff is being harassed and her lungs and health are constantly being assaulted.  Plaintiff can even smell the intrusive smoke—when Boyfriend ignites the cigarette.  She is very sensitive to cigarette smoke, and can often times smell it when no one else can.  Many other individuals suffer the same problems with cigarette smoke.  She can even taste the cigarette smoke.  This is intentional, and he is using the cigarette smoke as a deadly weapon.  He smokes from 9:00 a.m. until whatever time he deems necessary to stop.  Instead of hold a gun to Plaintiff's head, the Boyfriend is using the cigarettes/other burning substances, as weapons.  He gets to stop when he feels like it.  He has the power to cause Plaintiff to repeatedly suffer, and decide when Plaintiff can be in the unit.
Plaintiff can barely perform duties around the house, because she has to leave unit.  She also lives out of containers.  The Defendants should have removed this power, a long time ago.

Also, when Plaintiff was forced to stay away for a night on or about June 25, someone entered into her apartment—without proper notification.  Plaintiff noticed the door did not "stick" when she returned home.  She notified Kendall Ridge she was leaving—due to the infiltration of the cigarette smoke.  The staff had no business entering the unit, and they did not even leave notification of same.  There was no emergency or anything giving them cause to enter Plaintiff's unit.

However, when Plaintiff has contacted Defendants to let them know he is smoking; they have not entered and inspected the unit.  The mere fact that Plaintiff tells Defendants she is suffering from the intrusive, dangerous smoke; gives Defendants cause to enter the apartment.  However, they have no problem entering Plaintiff's unit—without proper/any notification…or leaving any notice letting Plaintiff know staff was in the unit.

The Director does not have to suffer and does not know what is going on.  However, Plaintiff suffers and does, indeed, know what is going on.  She is also heavily affected by what is going on.  She does not get much sleep; has been loosing her hair; has been switched to several anti-depressant medications; has even contemplated suicide; is unable to stay in her unit—as others; has to stay with friends; wanders around late-at-

7

night to escape the smoke; has had to leave town and stay with relatives; also suffers from chronic Rheumatoid Arthritis; has endured further injury as a result of having to sometimes immediately leave; sometimes has to leave and just go and walk around; (despite pain) has had to sleep in her car; sit in her car for hours; and encountered other problems.   Plaintiff still encounters problems.   She has lost her full-time job—due to her physical disabilities.  Her mother is her only relative in Maryland.  Her mother also goes out-of-town frequently, to assist Plaintiff's sister—who suffers from a brain-tumor.  Plaintiff's mother tries to help as much as she can…because she knows how frustrating and difficult it has been for Plaintiff to stop the disability discrimination. Plaintiff's uncle, her mother's brother, died last year; as a result of someone else's cigarette smoke.  This was devastating to Plaintiff and her mother.  She has endured emotional and mental anguish, and is on the cusp of a nervous break-down.

Plaintiff has been told repeatedly that she can leave at any time.  It is unlawful to discriminate in the rental, or to otherwise make unavailable or deny, a dwelling to a renter because of a disability of that renter. 42 U.S.C. § 3604 (f)(1)(A).  Defendants are not concerned that she has grounds to file a constructive eviction lawsuit for battery, retaliation, assault, failure to keep premises habitable; the covenant of peaceful enjoyment; negligence; harassment; and intentional infliction of emotional distress.  Everyone gets to go home and stay in their places of residence.  Plaintiff is constantly forced to leave and suffer.  This is an atrocity, and violation of her right to breathe and enjoy the unit.  She is also paying rent and having to leave and suffer.

Plaintiff's mother asked why Defendants would not give Tenant a 30-day-notice to vacate; if she did not comply with smoking on balcony.  The leasing consultant replied:  "Oh, we told Tonya she could leave." Plaintiff's mother stated that Plaintiff should not be forced to leave and Defendants allow Tenant's Boyfriend to remain in unit and not smoke on the balcony.  The leasing consultant then stated:  "Oh, they are protected by the Fair Housing Act."  It is beyond belief that the staff are making these untrue comments.  Plaintiff's mother told leasing consultant that Plaintiff is protected by the Fair Housing Act, because she has asthma and the Boyfriend's smoke is a violation of the Fair Housing Act.  Plaintiff's mother also stated that Defendants were violating her daughter's rights, and intentionally discriminating against her daughter's disability with their ignorance.

If an animal is abused, rightfully, the person who abused the animal can be arrested and go to jail. However, if a person is persistently assaulted and abused by intrusive, dangerous second-hand smoke, the smokers are defended.  The tenants who suffer are vilified.  Tenants with asthma and other chemical sensitivities have had to move and relocate because of seeping second-hand smoke.

Maryland does nothing to protect tenants from second-hand smoke…or those who suffer its effects.  It is up the courts to enforce laws set in place to protect those who suffer from the dangerous effects of second-hand smoke.  What will happen if she develops lung cancer? What happens if Plaintiff dies?  What are landlords going to do when the courts are filled with tenants who develop lung cancer?

As instructed by the Howard County Department of Health, Plaintiff has contacted the police department.  The Department informed Plaintiff that passive smoke is a danger to one's health.  Also, that intrusive second-hand smoke is a nuisance.

Unfortunately, Plaintiff had to go to the E.R., on the morning of Sunday, May 16, 2010.  This was due to a severe asthma attack—as a result of the tenant's boyfriend's chain-smoking.  She received oxygen treatments; very strong nebulizer treatments; and steroids.  She also experienced severe chest pains.  When she returned later that night, the room smelled like a bar.  Again, Plaintiff had to leave.  Defendants still refused

to stop the intrusive smoke from entering Plaintiff's unit. If Boyfriend smokes on the balcony; all parties would be able to enjoy the use of their respective dwellings.

This burden is constantly being placed on Plaintiff. This is a simple fix. All tenants should be able to live in their respective units. However, Defendants refuse to stop the smoke from entering Plaintiff's unit. She has moved—repeatedly. Prior to moving into the unit, maintenance told the staff no one smoked in #426. Yet, the Boyfriend smokes. The landlords bear no responsibility. They just want tenants to keep relocating, and ignore their federally-protected rights. Where are they supposed to live? What are landlords going to do when tenants start dying from asthma attacks and developing lung cancer? Landlords are aware of the dangers; however, do nothing to stop these dangers. This is an atrocity, and something has to be done. Peoples lives are on the line—not just those with asthma. There are no smoke-free apartments in Maryland.

Plaintiff has written letters regarding this matter, and has not received assistance. She keeps moving to and can never escape the intrusive second-hand smoke. Plaintiff believes her next move will be inside of a coffin—if the court does not step in and enforce the Fair Housing Act protections.

Plaintiff has had difficulty seeking counsel—as she cannot afford to pay $5,000.00. No attorney has been willing to accept the case on a contingent basis. Plaintiff has also searched to secure another unit; however, have been unsuccessful. She even had to forego a handicapped-accessible unit and move to this property—despite the necessity for a handicapped-accessible unit. However, she needs a place to live. She has also filed a complaint with the Department of Justice and other investigatory agencies. To-date, there have been no investigations. However, in the immediate interim, Plaintiff implores this court please grant her an injunction—to stop this person from smoking inside the unit. Since Defendants have no intention of stopping the intrusive, dangerous smoke; Plaintiff is relying upon this court for the injunction to stop the cigarette smoke from entering the unit. This will immediately provide her the much-needed protection from the danger of passive, excessive smoke.

WHEREFORE, Plaintiff prays for relief as follows:

An emergency injunction to stop second-hand, passive smoke from entering her unit—against Defendants, Defendants' agents, employees, successors, tenants and their occupants and all other persons in active concert or participation with any of them from discriminating because of her disability, in violation of the Fair Housing Act, 42 U.S.C. §§ 3601, et seq.

Respectfully submitted,

22 July 10

Date

Tonya Allen, Plaintiff
8359 Tamar Drive, #416
Columbia, Maryland 21045
410.730.0460

## CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of July 2010, copies of the foregoing Emergency Request for Injunction were mailed via first-class, pre-paid postage to:

Kendall Ridge Apartments
8399 Tamar Drive
Columbia, Maryland 21045

Defendants

Christopher E. Hashioka – President and CEO
Fairfield Properties, L.P. – Owners of Kendall Ridge
5510 Morehouse Drive
San Diego, California 92121

Defendants

Tonya Allen, Plaintiff *pro se*